AB:JV

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – X

UNITED STATES OF AMERICA

- against -

XIN WANG WANG and
RONG JIN YANG,

Defendants.

– – – – – – – – – – – X

**C O M P L A I N T**

(T. 21, U.S.C., § 846;
T. 18, U.S.C., §§ 2 and
3551 et seq.)

20-MJ-711

EASTERN DISTRICT OF NEW YORK, SS:

JACKY J. HE, being duly sworn, deposes and states that he is a Special Agent

with the United States Department of Homeland Security, Homeland Security Investigations

("HSI"), duly appointed according to law and acting as such.

On or about August 20, 2020, within the Eastern District of New York, the

defendants XIN WANG WANG and RONG JIN YANG, together with others, did knowingly

and intentionally attempt to possess with intent to distribute a controlled substance, which

offense involved a substance containing MDMA, a Schedule I controlled substance, and

ketamine, a Schedule III controlled substance, in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(C) and 841(b)(1)(E).

(Title 21, United States Code, Section 846; 18 U.S.C. Sections 2 and

3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") and have been since 2016.   Prior to that, I was an Officer with Immigration and Customs Enforcement, Division of Enforcement and Removal Operations for approximately nine years.   During my tenure at HSI, I have been involved in the investigation of numerous cases involving narcotics distribution.   Through my training, education and experience, I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs and the efforts of persons involved in drug trafficking to avoid detection by law enforcement. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file and from reports of other law enforcement officers involved in the investigation.

2.      On or about August 13, 2020, HSI received a Customs and Border Protection ("CBP") report stating that Dutch Customs officers seized 80 kilograms of ketamine from an air freight shipment shipped by Blokesch Yacht Service in the Netherlands to an address in Flushing, New York on or about August 11, 2020.

3.      On or about August 17, 2020, HSI agents and CBP officers at John F. Kennedy International Airport ("JFK") conducted a border search on another package also shipped from Blokesch Yacht Service in the Netherlands (the "SUBJECT PACKAGE") and

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

addressed to Jingsheng Huang at a storage facility located at 1200 McDonald Avenue in Brooklyn, New York (the "Storage Facility"). The SUBJECT PACKAGE was manifested as "Hendi gas barbeque grill master maxi," with a listed weight of 640 kilograms and transported via airline freight service.

4.      Upon examination, the SUBJECT PACKAGE contained three pallets, each containing six to seven boxes. Two boxes inside each pallet contained black plastic bags containing an off-white colored powdery substance and translucent plastic bags containing a brown substance with a rocky shape. The off-white colored substance field-tested positive for ketamine. The brown substance with a rocky shape field-tested positive for MDMA. The ketamine and MDMA, totaling approximately 112 kilograms and 30 kilograms, respectively, were seized by CBP and transferred to the custody of HSI for further investigation.[2]

5.      The SUBJECT PACKAGE was labeled as coming from:

Blokesch Yacht Service
Dijakartaterras 58
1095 DC Amsteradam
Netherlands

6.      The SUBJECT PACKAGE was addressed to:

Jingsheng Huang
1200 McDonald Avenue
Brooklyn, New York 11230
646-249-3694
yrj19871207@gmail.com

---

[2]   As of August 2020, ketamine, a Schedule III controlled substance, retails in the New York City area for approximately $40 to $60 per gram. The estimated street value for the 112 kilograms of ketamine seized by law enforcement is between $4.48 and $6.72 million.

7.     After seizing the ketamine and MDMA, CBP entered the SUBJECT PACKAGE into the United States.

8.     Jingsheng Huang, also known as Jingsen Huang, Jing Seng Huang, Jin Sen Hung and/or Jin Yang, engaged Aries Global Logistics, a Customs broker, to facilitate the entry of the SUBJECT PACKAGE into the United States.   Huang previously used Aries Global Logistics to enter air freight shipments addressed to him at the Storage Facility into the United States on three prior occasions in June and July 2020:

    a.  The first package was sent by Blokesch Yacht Service—the same shipper as the SUBJECT PACKAGE, and the same shipper as the August 11, 2020 package found to contain 80 kilograms of ketamine described above—addressed to Huang at the Storage Facility on or about June 8, 2020.   The package was manifested as "STEEL TABLE LEGS."   Around the Clock Trucking, a third-party trucking service, delivered the package addressed to Huang at the Storage Facility on or about June 15, 2020.

    b.  The second package was sent from a different seller located in Budapest, Hungary, addressed to Huang at the Storage Facility on or about July 16, 2020.   The package was also manifested as "STEEL TABLE LEGS."   Around the Clock Trucking delivered the package addressed to Huang at the Storage Facility on or about July 20, 2020.

    c.  The third package was sent from the same Budapest address as the second package, to Huang at the Storage Facility on or about July 22, 2020.   The package was manifested as "STEEL TABLE LEG."[3] Around the Clock Trucking delivered the package addressed to Huang at the Storage Facility on or about July 27, 2020.

9.     On August 20, 2020, the United States obtained an anticipatory warrant to search an unknown location to which the SUBJECT PACKAGE would be delivered and to

---

[3]   Our investigation into Huang has revealed that Huang is not operating any business that would sell or utilize the table legs or grills described on the manifests of the four packages described herein.

seize evidence, fruits and instrumentalities of violations of Title 21, United States Code,

Sections 841, 846, 952, 960, and 963.

10.     The United States removed the ketamine and MDMA from the

SUBJECT PACKAGE and placed a GPS tracking device and trip wire within the SUBJECT

PACKAGE.

11.     On August 20, 2020, the United States called 646-249-3694, the

telephone number appearing on the SUBJECT PACKAGE label.   The United States advised

the individual who answered the call that the SUBJECT PACKAGE would be delivered that

day to the Storage Facility.

12.     Also on August 20, 2020, prior to the delivery of the SUBJECT

PACKAGE to the Storage Facility, law enforcement agents observed the defendant XIN

WANG WANG seated alone in a white Audi SUV outside of the Storage Facility.   When the

truck delivering the SUBJECT PACKAGE arrived at the Storage Facility, WANG used a

black iPhone to photograph the truck.

13.     When the truck delivering the SUBJECT PACKAGE stopped at the

Storage Facility, an undercover agent posing as a delivery person (the "UA") was approached

by two Hispanic men saying that they were waiting to take the SUBJECT PACKAGE.   The

UA asked, in sum and substance, who was Jingsheng Huang – the addressee on the SUBJECT

PACKAGE, and stated that the UA needed the addressee, Jingsheng Huang, to sign for the

SUBJECT PACKAGE.   In response, the two Hispanic men provided a telephone number for

the UA to call.   When the UA called the number, an individual answered and said he would

be there.   Soon thereafter, the defendant RONG JIN YANG approached the UA and

indicated to the UA that he was the addressee Jingsheng Huang.   YANG told the UA, in sum and substance, "I am Jing," and signed for the SUBJECT PACKAGE, signing the name Jinsheng Huang.   YANG further attempted to "tip" the UA to help unload the SUBJECT PACKAGE from the delivery truck, but the UA declined.

14.     Because the SUBJECT PACKAGE is comprised of three pallets of boxes, the three pallets were moved one-by-one to outside of an external storage unit at the Storage Facility.   Once the three pallets were outside of the external storage unit, the two Hispanic men and the defendant RONG JIN YANG cut clear plastic wrapping around the boxes on the pallets and then moved the boxes into the external storage unit.

15.     Soon after the SUBJECT PACKAGE boxes were moved into the external storage unit, the team received an audio signal from the tripwire and movement device hidden within the SUBJECT PACKAGE.

16.     Thereafter, law enforcement agents observed the defendant RONG JIN YANG walking outside of the external storage unit.   YANG was walking ahead of the two Hispanic men and seemed to be walking faster than them.   Based on my training and experience, I believed that YANG was trying to leave the Storage Facility.

17.     At that point in time, law enforcement agents approached the Storage Facility, the white Audi SUV containing the defendant XIN WANG WANG, and the defendant RONG JIN YANG.

18.     As law enforcement agents approached the white Audi SUV containing the defendant XIN WANG WANG, WANG attempted to drive away.   Law enforcement

agents performed an investigatory stop to determine whether WANG was involved with the

SUBJECT PACKAGE or not.

19.     When asked what he had been doing at the location, the defendant XIN

WANG WANG told law enforcement agents that he had stopped to eat a meal, and then had

fallen asleep.   In response to questioning, WANG denied that he had been waiting for anyone

at the Storage Facility.

20.     The defendant XIN WANG WANG consented to a search of the car.

The rear of the car contained three grocery bags holding more than a dozen retail packages of

Ziplock storage bags.   In my training and experience, narcotics are often repackaged in

smaller Ziplock storage bags.

21.     When the defendant XIN WANG WANG consented to the search of the

car, he took two cellular phones from the console – a black iPhone and a gold iPhone.   I

asked if the two iPhones were WANG's iPhones and he indicated that they were his phones.[4]

Thereafter, WANG consented to a search of the phones by law enforcement agents and

voluntarily provided the black iPhone which was locked to me.   When I asked if he would

unlock the phone, WANG voluntarily did so, taking the phone back, unlocking it and handing

the phone back to me.   At that point, WANG again orally consented to my search of the

black iPhone.

---

[4]   Later that evening, during further questioning, the defendant XIN WANG WANG denied ownership of the black iPhone and claimed that he owned the gold iPhone.   He consented to law enforcement agents searching the gold iPhone.

22.     In the WeChat messaging application of the black iPhone, I saw that someone had texted a photograph of the delivery truck that had delivered the Subject Package. Also, in a Chinese WeChat message conversation from August 20, 2020, the phone user had asked in sum and substance "What is the quantity?" and received a response stating in sum and substance that the information was "sensitive," but that it was "a lot."[5]   After I saw the messages, I placed WANG under arrest.

23.     When law enforcements agents approached the defendant RONG JIN YANG, they identified themselves and placed YANG under arrest.   They patted YANG down and found a key to the exterior storage unit in his pocket.

24.     After placing the defendant RONG JIN YANG under arrest, law enforcement agents advised YANG of his Miranda rights in both English and Mandarin. Yang waived his rights and voluntarily spoke to law enforcement agents.

25.     The defendant RONG JIN YANG told law enforcement agents that he was taking delivery of the SUBJECT PACKAGE for a friend named "Ah Fei."   He told the agents that he had been paid $1,000 in advance of accepting the shipment, and that he expected to receive another $1,000-$2,000 after accepting the shipment.   He told the agents that he believed the SUBJECT PACKAGE contained "K Powder," a street name for ketamine.   He also acknowledged that "K Powder" is ketamine.

26.     The defendant RONG JIN YANG also told law enforcement that he had previously taken delivery of packages for the same friend on two other occasions, and had been paid $1,000 to $2,000 on the prior occasions.

---

[5] I am a certified Mandarin and Cantonese translator.

27.     The defendant RONG JIN YANG also told law enforcement that the email address on the SUBJECT PACKAGE – yrj19871207@gmail.com – had been created by his friend "Ah Fei" and that YANG had access to the email.

28.     The defendant RONG JIN YANG initially told law enforcement agents that he was being picked up by another friend who was waiting in the white Audi SUV – the defendant XIN WANG WANG.   Later in the evening, YANG told law enforcement agents that the other detainee – WANG – was the friend he had called to pick him up from the Storage Facility.

29.     During a search of the external storage unit, law enforcement agents found the boxes that had been unpacked from the SUBJECT PACKAGE and moved into the unit.

30.     WHEREFORE, your deponent respectfully requests that the defendants RONG JIN YANG and XIN WANG WANG be dealt with according to law.


/s/ *Jacky J. He*
JACKY J. HE
Special Agent
United States Department of Homeland Security,
Homeland Security Investigations


Sworn to by reliable telephonic means this
21st day of August, 2020

THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK